# UNITED STATES DISTRICT COURT

for the

## Eastern District of Michigan

|  |  |  |
|---|---|---|
| JEDEDIAH BROWN<br>*Plaintiff,* | )<br>)<br>) | |
| | ) | Case No._____ |
| **-v-** | )<br>) | |
| | ) | |
| LADEL LEWIS, CANDICE MUSHATT, | ) | **COMPLAINT AND JURY DEMAND** |
| JOANNE GURLEY, TERENCE GREEN, | ) | |
| VINCENT VILLAREAL, and OFFICER | ) | |
| GUY in their official and individual | | |
| capacities, | | |
| *Defendants.* | | |

## CIVIL ACTION

*This action alleges, inter alia, violations of the First Amendment, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, as well as violation of the Michigan Open Meetings Act, MCLS § 15.261, et seq., by members of the City Council of the City of Flint, Michigan, infringing upon the rights of Plaintiff as arising under those aforesaid bodies of law.*

Plaintiff JEDEDIAH BROWN, by and through his attorneys, Lento Law Group, P.C., and by way of Complaint, brings this action for damages and other equitable relief against Defendants, LADEL LEWIS, CANDICE MUSHATT, JOANNE GURLEY, TERENCE GREEN, VINCENT VILLAREAL, and H. GUY in their official and individual capacities, alleging as follows:

## INTRODUCTION

1. The City Council of the City of Flint, Michigan has gained nation-wide recognition, but unfortunately, not in a positive way.

2. A wealth of video segments from various Council meetings have gone viral online

1

on social media – predominately on Facebook and TikTok – due largely to the complete and utter chaos that unfolds at nearly every Council meeting.

3.    The Flint City Council has become notorious for its inequal application of Council rules, personality conflicts which impede City business, and the sheer frequency with which Council meetings descend into a circus-like spectacle.

4.    The City Council Meeting of April 28, 2025, was a recent example of just this dysfunction.

5.    What made April 28th's meeting unique, however, was that, rather than it being a particular Councilman or Councilwoman facing the despotic and dictatorial caprices of Council leadership, rather, it was a private citizen and member of the public in attendance at this particular meeting, who found both his Constitutional rights and his rights as arising under Michigan law, under attack from various members of the Flint City Council and the Flint Michigan police force.

## JURISDICTION AND VENUE

6.    This is an action for damages against the Defendants, who at all times, were acting under color of State law, and in vindication of Plaintiff's civil rights secured by 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Michigan Open Meetings Act, MCLS § 15.261, et seq., and the First Amendment to the United States Constitution.

7.    This Court has original subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 & 1343.

8.    This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to the claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

9.    Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as, upon information and belief, all Defendants reside in this district and the events giving rise to Plaintiff's

claims as complained of herein occurred within this district.

## PARTIES

10.     At all times relevant hereto, Plaintiff JEDEDIAH BROWN, is, upon information and belief, an adult resident citizen of the County of Tarrant, State of Texas, with a residential address believed to be 3000 Bardin Road, Grapevine, Texas 75052.

11.     At all times relevant hereto, Defendant LADEL LEWIS, the City Council President, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an official address for service of process believed to be 1101 S. Saginaw Street, Flint, Michigan, 48502. Said Defendant is sued in both her official and individual capacity.

12.     At all times relevant hereto, Defendant CANDICE MUSHATT, the City Council Vice President, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an official address for service of process believed to be 1101 S. Saginaw Street, Flint, Michigan, 48502. Said Defendant is sued in both her official and individual capacity.

13.     At all times relevant hereto, Defendant TERENCE GREEN, the Flint, Michigan Chief of Police, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with a with an employment address for service of process believed to be 210 E. 5th Street, Flint, Michigan, 48502. Said Defendant is sued in both his official and individual capacity.

14.     At all times relevant hereto, Defendant JOANNE GURLEY, the City Attorney for Flint, Michigan, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an official address for service of process believed to be 1101 S. Saginaw Street, Flint, Michigan, 48502. Said Defendant is sued in both her official and individual capacity.

15.     At all times relevant hereto, Defendant VINCENT VILLAREAL, a detective with the Flint City Police Department, is, upon information and belief, an adult resident citizen of the

County of Genesee, State of Michigan, with an employment address for service of process believed to be 210 E. 5th Street, Flint, Michigan, 48502. Said Defendant is sued in both his official and individual capacity.

16.     At all times relevant hereto, Defendant OFFICER GUY, a police officer with the Flint City Police Department, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an employment address for service of process believed to be 210 E. 5th Street, Flint, Michigan, 48502. Said Defendant is sued in both his official and individual capacity.

17.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## FACTUAL BACKGROUND

18.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

19.     On April 28, 2025, Plaintiff, JEDEDIAH BROWN, was present at the Flint City Council meeting.

20.     Being a political advocate on behalf of the citizens of Flint, Michigan, apart from having an interest himself in the goings-on of the City, Plaintiff intended to speak at the meeting and was also recording the meeting, as is his right, in the interest of transparency.

21.     On April 28, 2025, at the commencement of the meeting, Defendant Mushatt read aloud the established rules for decorum to all in attendance. In doing so, she recited the pertinent sections of the Flint City Code addressing assault, battery, and disorderly conduct. Furthermore, Defendant Lewis explicitly cautioned the assembly that any individual preventing the peaceful

4

and orderly conduct of the meeting would receive a single warning and, if the disruptive behavior persisted, that individual would be subject to arrest.

22.     It is a fundamental principle that a quorum—defined as a majority of all elected or appointed and sworn members of the Council—is required for the valid transaction of business at any council meeting. In the absence of a quorum, the remaining members may only adjourn the meeting to a later time or date, provided that proper public notice is given.

23.     Recently, the Flint City Council has experienced significant difficulties in assembling a sufficient number of elected or appointed and sworn members to meet the quorum requirement necessary for the conduct of official city business. This ongoing issue has contributed to procedural irregularities and underscores the potential for arbitrary decision-making during council meetings.

24.     On April 28, 2025, despite the Flint City Council meeting lacking a quorum and not being in an active legal session for the transaction of official business, Defendant Lewis acting in her capacity as Council President, proceeded to call for public speakers. It was during this meeting that the events giving rise to this civil rights complaint occurred.

25.     It is also important to note that the Flint City Council meetings are commonly recorded by members of the public in attendance, who record with all manner of electronic videotaping equipment: camera, camcorders, camera-phones, etc.

26.     That is to say that there was nothing unique about the fact that Plaintiff chose to record the meeting, nor was there anything unique or unusual about Plaintiff's camera specifically, as compared to other cameras that have been used to record Flint City Council meetings in the past.

27.     Prior to the subject incident which will be complained about herein, at all times leading up thereto, from nearly the very beginning of the evening's Council meeting, Defendant

Lewis adopted a needlessly aggressive tone towards the public, which seemed to create an air of hostility.

28.     Speakers were required to complete an information card with their identifying details and place it in a designated box. However, upon information and belief, Defendant Mushatt retrieved the box prior to the formal start of the meeting and proceeded to read the opening rules. This action effectively prevented other speakers from submitting their information, despite the fact that the meeting had not officially commenced, and the council had not met the quorum requirement necessary to conduct city business.

29.     On April 28, 2025, despite the Flint City Council meeting lacking a quorum, Plaintiff was designated as the first of only a few speakers. Plaintiff approached the podium to address the members present and to raise concerns about several irregularities in the actions of the City Council. Under the established rules, Plaintiff was allotted three minutes to speak, during which he detailed issues including the alleged reallocation of $75,000 in funds, the failure of council members to disclose personal financial interests tied to city contracts, and accusations that the police were being weaponized against constituents. During his public address, council members arrived, and the city council finally had a quorum.

30.     After Plaintiff made his comments at the podium, he vacated the podium and returned to his seat. Subsequently, Defendant Lewis instructed the clerk to call the next speaker. Importantly, no member of the City Council issued any warning for misconduct during or immediately after Plaintiff's public comments.

31.     As background, which is pertinent to this matter, the Plaintiff is a community organizer actively supporting Mrs. Biggs-Leavy, a candidate for the third ward. Mrs. Biggs-Leavy is among several individuals involved in the recall effort aimed at removing Defendant Lewis from her position on the Flint City Council. This context underscores the Plaintiff's role

in advocating for accountability and transparency within the council.

32.     Given this history, it is reasonable to infer—and the subsequent events described herein further suggest—that Defendant Lewis harbored personal animosity towards the Plaintiff. This animus likely stems from the Plaintiff's support for Mrs. Biggs-Leavy and his involvement in the recall efforts to remove Defendant Lewis from her position on the Flint City Council.

33.     Upon information and belief, after multiple attendees questioned the meeting procedures, Defendant Mushatt declared that no additional public speakers would be permitted on the grounds that the meeting had already commenced. This announcement abruptly curtailed the public's opportunity to participate and prompted immediate expressions of outrage from those present. Upon information and belief, Defendant Mushatt undertook this action intentionally to inhibit community feedback and to impede the exercise of their constitutional rights.

34.     The ensuing uproar from members of the audience—who contended that, in the absence of a quorum, it was unlawful for the meeting to be called to order and for speakers to be denied their opportunity to address the council—prompted Defendant Lewis to issue a generalized procedural warning. Notably, this warning was directed at the audience as a whole, rather than being aimed specifically at the Plaintiff.

35.     After the situation had calmed, the second speaker approached the podium and inquired whether he was the final scheduled speaker. Receiving no response from the council, he then announced that he would donate his remaining speaking time to another potential speaker. This declaration immediately provoked Defendant Lewis, who contended that the speaker had effectively surrendered his allotted time, and consequently, neither his nor any additional public comments would be permitted. Defendant Lewis then ordered the speaker to return to his seat.

36.     At this juncture, a council member declared her intent to leave the meeting, asserting that the session was being conducted in violation of established guidelines and without

the requisite quorum. In response, Defendant Lewis characterized her declaration as an improper point of order.

37.     At this point, a male council member retrieved his briefcase and exited the meeting without offering any comment. His departure, along with the earlier exit of a council member, elicited applause from the audience, who recognized that the absence of a quorum rendered the meeting invalid for conducting official city business. Pursuant to established rules, these departures should have resulted in the immediate adjournment of the meeting.

38.     Rather than adjourning the meeting following the departure of multiple council members, the remaining few members chose to continue. During this time, a female citizen of Flint, Michigan, approached the podium and delivered a passionate public outcry for three minutes, alleging corruption among members of the board. Her remarks underscored the community's growing frustration with the council's actions and governance.

39.     At this time, the clerk notified Defendant Lewis that there were no further speakers to be heard. During this entire time, the Plaintiff remained seated and quiet.

40.     At this point, Defendant Lewis called for responses and comments from the members of the City Council. As the council member representing the second ward delivered her remarks, another male council member abruptly left the council table. His departure further reduced the number of present council members to levels well below the quorum required to conduct official city business.

41.     At this juncture, Plaintiff approached the podium and inquired of Defendant Lewis and the other remaining council members whether the council had achieved a quorum, despite the conspicuous absence of the required number of council members. Plaintiff's inquiry underscored the clear and ongoing deviation from legally mandated procedures, further evidencing the procedural irregularities and the Defendants' disregard for established statutory

8

requirements.

42.     Upon information and belief, a member of the City Council asserted that a quorum had been achieved even though the required number of members were not visibly present in the room or seated at the table. Plaintiff returned to his seat. Importantly, at no point was any warning regarding decorum issued to Plaintiff by any council member.

43.     Shortly thereafter, Defendant Lewis addressed the audience, instructing them to cease their conversation. She further directed that any further remarks or discussions should be conducted in the hallway, thereby preventing any interference with the comments being made by the remaining council members.

44.     After the council persons comments ended, Defendant Lewis placed the council meeting "at-ease" until "we can reestablish quorum.

45.     Shortly thereafter, Defendant Lewis observed that a single council member remained in the council chamber. Relying solely on his presence at the far end of the room, she asserted that his presence allowed them to meet quorum, thereby claiming justification to continue the meeting. This assertion disregards the statutory requirement that a quorum consists of a majority of the elected or appointed and sworn members of the Council, rendering her actions procedurally and legally invalid.

46.     Defendant Lewis proceeded to commend certain council members on their work while extolling the environmental benefits of urban trees. Significantly, during these comments, she never formally brought the meeting back into order, leaving it technically in an "at-ease" status. It was only after completing her commendations—and when it was time to transition to addressing city business—that Defendant Lewis stated the meeting could proceed, relying solely on the councilman's return to his seat, despite the lack of a proper quorum for official proceedings.

47. Moreover, the absence of a proper quorum directly obstructed the City Council's scheduled acknowledgment of local citizens who had saved another person's life. This procedural failure further exemplifies the arbitrary and unlawful manner in which the meeting was conducted, undermining the opportunity to honor community members and disrupting the orderly administration of city business.

48. Subsequently, Councilwoman Judy Priestly left the council table and passed by the Plaintiff. When the Plaintiff inquired whether the meeting was "in recess," she clarified that, according to council procedure, the meeting remained "at-ease" until a quorum was achieved.

49. Plaintiff, perplexed by the use of the term "at-ease"—which is not defined within the established meeting rules—publicly requested clarification on its procedural meaning. This request underscores the ambiguity and arbitrariness inherent in how meeting procedures were applied, contributing to the broader context of procedural irregularities that form the basis of this civil rights complaint.

50. Plaintiff, understanding that the meeting was in an "at-ease" status and thereby not officially in session, declared "Beverly Biggs for Third Ward." This act, executed during a period when formal procedural safeguards were evidently lacking, barely registered with the audience, and elicited no rebuke or warning from any City Council member present during the recess. Plaintiff's action represented an exercise of his constitutional right to free speech, further highlighting the arbitrary and capricious enforcement of meeting procedures that is central to the claims asserted in this civil rights complaint.

51. Plaintiff approached the podium and requested an additional three minutes to speak, asserting that the council was in an "at-ease" state.

52. At that moment, Defendant Police Chief Terence Green, attired in full uniform and visibly armed, advanced toward the Plaintiff accompanied by Defendant Villareal, who was

in plain clothes with a sidearm prominently displayed. Together, they demanded that Plaintiff immediately "get off the mic" or leave the council chamber. This action, conducted in a manner that intimidated Plaintiff and curtailed his right to speak, further evidences the arbitrary and oppressive conduct underlying the proceedings at the meeting.

53.     Upon information and belief, Councilpersons Ladel Lewis and Candice Mushatt instructed, directed, or otherwise had the police-defendants take the following actions against Plaintiff.

54.     In the alternative, despite the duty to maintain order at council meetings, including the duty to provide members of the public with safe and free access to City Council, and to protect the public's rights under the United States and Michigan Constitutions and the Michigan Open Meetings Act, Councilpersons Ladel Lewis and Candice Mushatt took no action to prevent the following illegal actions against the Plaintiff about which they were aware.

55.     Furthermore, Councilpersons Ladel Lewis and Candice Mushatt took no action to prevent the following illegal actions against the Plaintiff about which they were aware even though they also knew that Plaintiff had not been given the necessary warnings discussed at the beginning of the meeting and mandated by Council's rules.

56.     Plaintiff stepped away from the microphone and, seeking clarity, asked Defendant Green to explain the procedural meaning of "at-ease." Instead of providing an explanation, Defendant Green ordered Plaintiff to step away from the microphone, and Plaintiff then complied by stepping away from the microphone.

57.      Despite Plaintiff's compliance with Defendant Green's microphone direction, and behaving in a quiet, peaceful and respectful manner, Defendant Green ordered Plaintiff "to get out" of the council chamber without offering any lawful justification or cause for his removal—especially given that Plaintiff had This unwarranted directive further evidences the arbitrary and

11

unlawful nature of the proceedings, constituting a violation of Plaintiff's constitutional rights.

58.     During the incident, local residents began questioning the justification for Plaintiff's removal from the council chamber. Upon information and belief, Defendant Villareal remarked on the Plaintiff's possession of a bullhorn—even though no rule prohibits the use of a bullhorn, and no violation of decorum occurred, given that the meeting was in an "at-ease" state. This comment further underscores the arbitrary and capricious nature of the Defendants' actions, evidencing a deliberate effort to suppress public participation and silence constitutionally protected speech.

59.     Defendant Green, unwilling to permit Plaintiff to remain outside the council chamber, ordered Plaintiff to leave the building entirely. Despite this directive, Defendant Green failed to articulate any law that Plaintiff had ostensibly violated or any basis under which Plaintiff could be denied his legally protected right to attend a public meeting. This action not only lacked a lawful foundation but also further underscores the improper and arbitrary suppression of the Plaintiff's constitutional rights.

60.     Defendant, Police Chief Terence Green, forcibly removed Plaintiff from the public building, thereby denying him his constitutionally protected right to participate in a public forum. Moreover, Defendants Green and Villareal intentionally used their physical presence to invade Plaintiff's personal space and corral him toward the elevator. These actions constitute an excessive and unlawful use of force that intruded upon Plaintiff's rights to free speech, assembly, and due process, and further exemplify the systematic and targeted suppression of his civil rights during the meeting.

61.     During this process, Defendant Green issued multiple baseless threats of arrest—an abuse of power made without any lawful justification. Moreover, Defendants Green and Villareal engaged in unwanted and unnecessary physical contact with Plaintiff, forcefully pushing

12

him into the elevator despite his compliance with Defendant Green's unlawful order. These actions constitute an egregious misuse of authority and clearly raise serious concerns about misconduct and the exercise of excessive force under constitutional and statutory protections. As a result, Plaintiff's First Amendment rights to freedom of speech and assembly, as well as his Fourth and Fourteenth Amendment rights against unreasonable force and arbitrary governmental action, were flagrantly violated.

62.     Defendant Green reiterated that if Plaintiff did not vacate the premises, Plaintiff would face arrest. However, Defendant Green provided no explanation for why Plaintiff should be removed, nor did he identify any law that Plaintiff had violated to warrant such an arrest and detention. This failure to disclose a legal basis for his actions further demonstrates the arbitrary and coercive nature of Defendant Green's conduct. Such an unfounded threat of arrest not only lacks legal justification but also exacerbates the violation of Plaintiff's constitutional rights, specifically his rights to free speech and peaceful assembly.

63.     During the Plaintiff's forced and unjust removal from the council chamber, Defendant Joanne Gurley, in her capacity as the city attorney, failed to fulfill her duty to provide sound legal counsel. Instead of advising her clients against their unlawful actions, which resulted in the violation of the Plaintiff's civil rights, Defendant Gurley stood by and allowed the unjust expulsion to proceed without just cause, thereby compounding the harm done to the Plaintiff.

64.     While in the elevator, Defendant Villareal indicated that Plaintiff was being removed due to the meeting's designated order. However, the meeting was in an "at-ease" status—meaning it was not actively engaging in the formal conduct of city business—and no decorum warning had been issued to Plaintiff as required by established procedures. This inconsistency highlights the arbitrary enforcement of procedural rules and further underscores the unauthorized suppression of Plaintiff's rights.

65.     While exiting the elevator, Defendant Green engaged in unwanted and unnecessary physical contact with the Plaintiff while instructing him to leave the building. In response to this unwarranted contact, the Plaintiff explicitly requested that Defendant Green refrain from touching him. Defendant Green then warned that if the Plaintiff did not leave the building, he would be arrested for disorderly conduct.

66.     Plaintiff continued walking toward the exit of the building until he reached the area outside the main entryway.

67.     When Plaintiff requested that Defendant Villareal provide his name and badge number, Defendant Villareal failed to comply with this basic request for identification. A local citizen later identified him as Villareal. Upon a further inquiry by Plaintiff specifically for his badge number, Defendant Villareal stated that he did not possess one. This failure to furnish standard identification not only casts doubt on Defendant Villareal's authority but also underscores the arbitrary and irregular conduct exhibited during the proceedings.

68.     Upon information and belief, Defendant Green stationed Defendant Officer Guy at the front door as a sentry specifically to prevent Plaintiff from reentering the building. This action further underscores the deliberate measures taken to keep Plaintiff excluded from participating in the public forum, compounding the earlier violations of his constitutional rights.

69.     Officer H. Guy, whose first name is currently unknown to the Plaintiff, informed the Plaintiff that Defendant Police Chief Terence Green had instructed him to arrest the Plaintiff for trespassing if the Plaintiff reentered the building. This directive was issued and enforced despite the absence of lawful justification to exclude the Plaintiff from attending a public meeting or accessing a public building, constituting a violation of the Plaintiff's rights.

**COUNT I**
**INFRINGEMENT ON FREEDOMS OF SPEECH & ACCESS**
**FIRST & FOURTEENTH AMENDMENT**

**As to Defendants Ladel Lewis, Candice Mushatt, Joanne Gurley, Terence Green, Vincent Villareal, and Officer Guy**
**(42 U.S.C. § 1983)**

70.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

71.     The First Amendment to the United States Constitution provides as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

72.     As incorporated to the States through the Fourteenth Amendment, the First Amendment provides protection to, and opportunity for, free speech in public forums and the freedom to access said forums.

73.     Ensconced in these First Amendment rights is the right to record in various public fora.

74.     Within the Sixth Appellate Circuit, the scope of the right to record in public fora appears to vary depending on the particular forum at issue.

75.     For example, it is well-settled that the First Amendment guarantees the right of public access to criminal trials, including the right to listen, take notes, and to disseminate and publish what an individual observes at the proceeding. See, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555,575-80 (1980); see also, Somberg v. Cooper, 582 F.Supp.3d 438, 443 (E.D. Mich. Jan. 26, 2022).

76.     "The First Amendment's right to access criminal proceedings has been expanded to several other proceedings outside of the criminal-judicial context." Somberg, supra. at 443; see also, Detroit Free Press v. Ashcroft, 303 F.3d 681, 695 (6th Cir. 2002).

77.     For matters outside of the trial phases of criminal proceedings, many cases have consistently applied the two-part "experience and logic" test articulated in Richmond Newspapers,

supra., and its subsequent line of cases. See, e.g., Press-Enter. II, 478 U.S. at 13 (preliminary hearings); Press-Enter. I, 464 U.S. at 501-04, (*voir dire* examination and juror selection); United States v. Simone, 14 F.3d 833, 842 (3d Cir. 1994) (post-trial examination of juror for potential misconduct); United States v. Smith, 787 F.2d 111, 116 (3d Cir. 1986) (transcripts of sidebars or chambers conferences concerning evidentiary rulings); United States v. Criden, 675 F.2d 550, 554 (3d Cir. 1982) (pretrial suppression, due process and entrapment hearings).

78.     The Sixth Circuit, in Detroit Free Press v. Ashcroft, explains, "The Richmond Newspapers two-part test has also been applied to particular proceedings outside the criminal judicial context, including administrative proceedings." supra, at 695.

79.     Even further, the Sixth Circuit, opined, "[W]e believe that there is a limited First Amendment right of access to certain aspects of the executive and legislative branches." Id.

80.     Regarding the first prong of the two-part test laid out in Richmond Newspapers – "experience" – the Sixth Circuit explained, "[T]he case for a right of access has special force when drawn from an enduring and vital tradition of public entree to particular proceedings or information." Id. at 589.

81.     Put another way, because a "tradition of accessibility implies the favorable judgment of experience," Globe Newspaper, 457 U.S. at 605 (quoting Richmond Newspapers, supra. at 589) [the Court must] consider . . . whether the place and process have historically been open to the press and general public." Press-Enter. II, 478 U.S. at 8.

82.     With this first prong in mind, the "place and process" at issue here is the Flint City Council, specifically, the meeting of Monday, April 28, 2025.

83.     Such Flint City Council meetings have traditionally been open to the public, and in fact, such openness is mandated by the City's Charter, specifically, Sec. 1-404, and by the Michigan Open Meetings Act, 1976 PA 267, MCL 15.261 et seq.

84.     Thus, both historical precedent and the laws unpinning such precedent, weigh in Plaintiff's favor with regard to the "experience" prong of the <u>Richmond Newspaper</u> two-part test.

85.     With regards to the second prong – "logic" – this prong asks, "whether public access plays a significant positive role in the functioning of the particular process in question." <u>Press-Enter. II</u>, 478 U.S. at 8-9.

86.     As the Sixth Circuit explained in <u>Detroit Free Press v. Ashcroft</u>, "public access acts as a check on the actions of [the public body] by assuring us that proceedings are conducted fairly and properly... [and] Second, openness ensures that government does its job properly; that it does not make mistakes." supra, at 703-704.

87.     Underlying the right of access, is "the common understanding that a major purpose of the [First] Amendment was to protect the free discussion of governmental affairs" and "to ensure that this constitutionally protected 'discussion of government affairs' is an informed one." <u>Globe Newspaper Co. v. Superior Court for Norfolk Cnty.</u>, 457 U.S. 596, 604-05, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982).

88.     Public scrutiny also "fosters an appearance of fairness" and "permits the public to participate in and serve as a check upon the judicial process." <u>Id</u>. at 606.

89.     With these principles in mind, the ability of Plaintiff to access the public forum and to record the goings-on of the Flint City Council, clearly serves a significant positive role in the Council's functioning in that it reinforces the openness of the Council meetings, subjects its members to public scrutiny, and ensures that the discussion of government affairs which takes place at this meetings can be disseminated to the public at-large, thus fostering an informed citizenry, particularly for those not in attendance.

90.     "Public access [] helps inform the public of the affairs of the government. Direct knowledge of how their government is operating enhances the public's ability to affirm or protect

government's efforts. When government selectively chooses what information it allows the public to see, it can become a powerful tool for deception." Detroit Free Press v. Ashcroft, supra. at 704-705.

91.     Thus, it appears clear that Plaintiff's access to the Flint City Council meeting of April 28, 2025, served a significant positive role in the Council's functioning for the foregoing reasons, weighing in Plaintiff's favor with regard to the "logic" prong of the Richmond Newspaper two-part test.

92.     Thus, having satisfied both prongs of the Richmond Newspaper two-part test, a First Amendment right of access attaches to the Flint City Council meetings, with regards to Plaintiff's right to be present and record.

93.     Even so, admittedly, the right of access is not absolute.

94.     Utilizing the Richmond Newspaper logic-experience test, the Sixth Circuit made clear that, the right which attaches where the access sought has "historically been open to the press and general public... and public access plays a significant positive role in the functioning of the particular process in question" is a "qualified right". United States v. Miami Univ., 294 F.3d 797, 821 (6th Cir. 2002).

95.     To the extent that Plaintiff's right to attend and record the Flint City Council meeting may be construed as a speech right, rather than an access right, the foregoing principle that such a right is a qualified right is consistent with the principle that the government can impose, time, place, and manner restrictions on free speech.

96.     Even so, those time, place, and manner restrictions, like restrictions on the qualified right to access, must nonetheless be "narrowly tailored to serve a significant governmental interest." Lexington H-L Servs. v. Lexington-Fayette Urban Cty. Gov't, 879 F.3d 224, 228 (6th Cir. 2018) (as to time, place, and manner restrictions); see also, Somberg, supra. at 444, and Eu v.

San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214 (1989) (as to access restrictions) ("The right to access, like many aspects of the First Amendment, is not absolute. For a state action for survive a First Amendment challenge, the enforced regulation must be narrowly tailored to advance a compelling state interest.")

97.     The action taken against Plaintiff in this matter – his expulsion from the Flint City Council meeting of April 28, 2025, for recording the meeting with a camera and for addressing common concerns with council's substituents – neither advanced nor served a significant or compelling governmental interest, nor was Plaintiff's expulsion from said public meeting narrowly tailored.

98.     The compelling governmental interest implicated by the facts at hand would be the continued business of the Flint City Council meeting.

99.     Plaintiff's expulsion from the meeting, allegedly for having a bullhorn, expressing opposition during a meeting without a quorum, and recording the proceedings with a camera, fails to advance any compelling governmental interest. The city council meeting was 'at ease' due to the lack of a quorum, meaning it was not in active session and the alleged actions of the Plaintiff did not disrupt any official proceedings. The circumstances surrounding the expulsion highlight the absence of lawful justification for barring the Plaintiff from the meeting.

100.    Plaintiff's expulsion cannot be justified as advancing the functioning of the City Council, as Defendant Lewis failed to take any procedural action to call the meeting to order during or after the Plaintiff's address. This inaction constitutes a direct violation of Rule 29.7 of the Rules Governing Meetings of the Flint City Council, as adopted in 2023. Rule 29.7 specifically requires that public speakers be addressed for failing to remain germane, using vulgar language, or exceeding the allotted speaking time. By neglecting to adhere to these established procedures, Defendant Lewis enabled the unjust expulsion of the Plaintiff, infringing upon the Plaintiff's civil

rights.

101.    Additionally, the expulsion of Plaintiff cannot be said to have been narrowly tailored in that there were less restrictive means available to accomplish the same goal.

102.    Furthermore, the expulsion of the Plaintiff cannot be deemed narrowly tailored to address any legitimate disruption. Defendant Green, the Flint Police Chief, along with two other officers, attended the April 28, 2025, meeting despite Defendant Green having no established history of attending such events. Upon information and belief, Defendant Green's presence at the meeting was unrelated to any official duties and was instead premeditated, with the sole purpose of orchestrating the Plaintiff's removal from the chamber and the proceedings. This deliberate targeting of the Plaintiff demonstrates an abuse of authority and a violation of the Plaintiff's civil rights.

103.    An alternative, less restrictive means of addressing the situation would have been to request that the Plaintiff wait to speak until the City Council had reached quorum and was able to proceed with the meeting. This approach would have upheld the Plaintiff's rights while respecting procedural norms, eliminating the need for the Plaintiff's expulsion.

104.    Despite the presence of less restrictive alternatives to address any concerns, Defendant Lewis chose to expel the Plaintiff from the meeting entirely. This expulsion was executed through the involvement of duly licensed police officers, constituting an excessive and unjustified action that violated the Plaintiff's lawful rights to attend and speak at a public meeting.

105.    During the Plaintiff's forced and unjust removal from the council chamber, Defendant Joanne Gurley, in her capacity as the city attorney, failed to fulfill his duty to provide sound legal counsel. Instead of advising her clients against performing their unlawful actions, which resulted in the violation of the Plaintiff's civil rights, Defendant Gurley stood by and allowed the unjust expulsion to proceed without just cause, thereby compounding the harm done

to the Plaintiff due to her inaction.

106.    Therefore, the expulsion of the Plaintiff from the April 28, 2025, Flint City Council meeting, carried out by Defendant Lewis, armed police officers—Defendants Green, Villareal, and Guy—and City Attorney Joanne Gurley, who endorsed this action by failing to act or advise her clients despite countervailing legal precedent, neither advanced a compelling governmental interest nor was narrowly tailored in its scope. This unjust and excessive measure violated the Plaintiff's constitutional rights and demonstrated a misuse of authority under the guise of lawful governance.

107.    Rather, Rather, the facts – especially considering (1) that the city council meeting was "at-ease" and did not have a quorum; (2) that Defendant Lewis made no procedural effort to call the meeting to order; (3) the haste and indignancy with which Chair Lewis made up her mind on the issue of Plaintiff's expulsion (rather than the less restrictive alternatives), and (4) the Defendants' knowledge that Plaintiff was an active supporter of Mrs. Biggs-Leavy – make clear that the Defendants' action was nothing more than an arbitrary, capricious, vindictive, despotic, and needlessly restrictive infringement on Plaintiff's First Amendment rights, as aforesaid.

### COUNT II
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
**As to Defendants Ladel Lewis, Candice Mushatt, Terence Green,**
**Joanne Gurley, Vincent Villareal, and Officer Guy**
**(42 U.S.C. § 1985)**

108.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

109.    As the Sixth Circuit opined in Taylor v. Streicher, 465 Fed. Appx. 414, 419 (6th Cir. 2012), the elements of a claim arising under 42 U.S.C. § 1985 are, "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that

causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." (quoting, <u>White v. Trapp</u>, 93 F. Appx. 23, 26 (6th Cir. 2004)).

110.    A plaintiff making a claim under 42 U.S.C. § 1985 must also allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Bartell v. Lohiser, 215 F.3d 550, 559-60 (6th Cir. 2000).

111.    At all times relevant hereto, the Defendants named in this Count conspired so as to deprive Plaintiff of the equal protection of the laws, specifically, Plaintiff's rights as arising under the First Amendment, as alleged more completely in Count I herein, and which Plaintiff specifically incorporates in its entirety by reference.

112.    The Defendants named in this Count acted in furtherance of that conspiracy by unjustly expelling Plaintiff from an open public meeting, and as to City Attorney Joanne Gurley, by failing to offer a legal opinion against Plaintiff's expulsion despite legal precedent which Defendant Gurley should have been aware of.

113.    By acting in this manner, these Defendants deprived Plaintiff of his rights as arising under the First Amendment, and as articulated more fully in Count I herein.

114.    Given the history of the Council – specifically, the great deal of public animosity between the Defendants named in this Count and the community activists supporting third ward candidate Biggs-Leavy – it is clear that the conspiracy was discriminatorily motived by Plaintiff's political affiliation given the Defendants' knowledge that Plaintiff was associated with Ms. Biggs-Leavy and her legal team.

115.    During the Plaintiff's forced and unjust removal from the council chamber, Defendant JoAnne Gurley, in her capacity as the city attorney, failed to fulfill her duty to provide sound legal counsel. Instead of advising her clients against their unlawful actions, which resulted in the violation of the Plaintiff's civil rights, Defendant Gurley stood by and allowed the unjust

expulsion to proceed without just cause, thereby compounding the harm done to the Plaintiff.

116.     It is clear that the Defendants specifically targeted the Plaintiff, while other individuals present in the City Council chamber on April 28, 2025, who were also recording the proceedings, were not subjected to similar treatment. The targeting of the Plaintiff was solely due to his attendance for the purpose of expressing concerns about corruption, as well as his act of recording the proceedings. This selective action demonstrates a deliberate effort to suppress the Plaintiff's voice and violates his rights.

117.     Thus, the Defendants have violated 42 U.S.C. § 1985, causing Plaintiff to suffer an unjust deprivation of his constitutional rights as arising under the First Amendment.

## COUNT III
## NEGLIGENCE *PER SE*
## VIOLATIONS OF THE MICHIGAN OPEN MEETINGS ACT
**As to Defendants Ladel Lewis, Candice Mushatt, Joanne Gurley, Terence Green,
Vincent Villareal, and Officer Guy
(MCLS § 15.261, *et seq.*)**

118.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

119.     The Michigan Open Meetings Act (hereinafter, the "MI OMA"), codified at MCLS § 15.261, et seq., provides in relevant part at § 15.263(1), as follows:

> All meetings of a public body must be open to the public and must be held in a place available to the general public. All persons must be permitted to attend any meeting except as otherwise provided in this act. The right of a person to attend a meeting of a public body includes the right to tape-record, to videotape, to broadcast live on radio, and to telecast live on television the proceedings of a public body at a public meeting. The exercise of this right does not depend on the prior approval of the public body. However, a public body may establish reasonable rules and *regulations* in order to minimize the possibility of disrupting the meeting. (Emphasis added).

120.     The Defendants named in this Count, as members of the Flint City Council, a public body to whom the provisions of the MI OMA apply, have violated the above-cited section of the

MI OMA in expelling Plaintiff from the City Council meeting of April 28, 2025, and by denying him the ability to freely participate and/or record the meeting, as articulated with more detail earlier herein.

121.    Plaintiff's expulsion from the April 28, 2025, City Council meeting was triggered by his actions, including recording the proceedings with his camera, possessing a bullhorn, and speaking at the podium in support of Mrs. Biggs-Leavy. These actions, none of which constituted a legitimate disruption, highlight the Defendants' deliberate targeting of the Plaintiff in retaliation for his advocacy and lawful participation in a public meeting.

122.    Defendant Lewis failed to take any action to implement less restrictive measures or to call the meeting to order, as required under Rule 29.7. This failure underscores the arbitrary and excessive nature of the Plaintiff's expulsion, which was conducted without adherence to established procedural rules designed to address public participation in council meetings.

123.    Although MCLS § 15.263(1) explicitly grants public bodies the authority to establish reasonable rules and regulations to minimize disruptions during meetings, the Flint City Council has failed to adopt any such rules or regulations pertaining to the possession of a bullhorn in the council chambers or speaking at the podium when the council meeting is 'at ease.' This lack of established guidelines underscores the arbitrary and unjust nature of the Plaintiff's expulsion.

124.    Additionally, the "Rules Governing Meetings of the Flint City Council" do not address the recording of council meetings or establish procedural guidelines for situations in which the council is without quorum and a public member is speaking at the podium. This lack of clarity and specificity in the rules further emphasizes the arbitrary and unjust nature of the Plaintiff's expulsion, as no established policies were violated.

125.    Guidance can instead be found in the Flint City Charter, specifically, Sec. 1-404, which simply provides that, "As required by law, the City, its officials and employees shall comply

with, the Open Meetings Act (citation omitted), as amended, and the Freedom of Information Act (citation omitted), as amended".

126.    Thus, neither the Flint City Council nor the City at large has promulgated any rules or regulations restricting the rights of the public—including, as relevant here, the Plaintiff—with respect to the use of recording devices, the possession of a bullhorn, or speaking during an "at-ease" council meeting at open meetings of a public body. The absence of such restrictions further underscores the arbitrary and unjust nature of the actions taken against the Plaintiff.

127.    To the extent that the Council's decision to expel the Plaintiff—based on his possession of a bullhorn, recording the proceedings, or speaking at the podium during a council meeting that lacked a quorum and was "at-ease" — may be construed as a "rule or regulation," such a decision was patently unreasonable under the circumstances. The ruling lacked a legitimate basis and failed to address any compelling governmental interest in a narrowly tailored manner, further infringing upon the Plaintiff's rights.

128.    Clarifying the nature of what constitutes "reasonable rules and regulations" under MCLS § 15.263(1), then-Michigan Attorney General, Frank J. Kelly wrote in Office of Attorney General Opinion No. 6499, dated February 24, 1998, that, "It is my opinion, therefore, that a [public body] may establish reasonable regulations governing the televising or filming by electronic media of a [] hearing open to the public in order to minimize any disruption to the hearing *but may not prohibit such coverage*." (Emphasis added). Plaintiff respectfully requests that the Court take judicial notice of this opinion, a true and correct copy of which is annexed hereto as **EXHIBIT "A".**

129.    Writing in the context of a Board of Education meeting, Attorney General Kelly wrote, "While the board must meet in open or closed session in accordance with the teacher's request, it has no statutory authority to exclude the electronic media from covering a hearing which

is open to the public." **(Ex. "A").**

130.    The April 28, 2025, Flint City Council meeting constituted an open public meeting, and it is evident that the Defendants named in this Count lacked any statutory or other lawful authority to expel the Plaintiff from this meeting. Furthermore, there was no legitimate or legal justification for the police to physically remove the Plaintiff or threaten him with arrest, demonstrating a clear violation of the Plaintiff's rights under the circumstances.

131.    Finally, neither the light on the Plaintiff's camera nor the possession of a bullhorn, which was never utilized within the council chambers, can reasonably be considered genuine distractions. Moreover, since the meeting could not proceed due to the absence of a quorum, the Plaintiff's actions did not disrupt any active council proceedings, further undermining any justification for his expulsion.

132.    As members of the Flint City Council, a public body to whom the provisions of the MI OMA apply, the Defendants had a duty to comply with the MI OMA's provisions and comport their behavior in accordance therewith.

133.    Plaintiff, accompanied by citizens and residents of Michigan attending the open public meeting, was, at all times, a member of the class of persons that MCLS § 15.263(1) was specifically designed to protect. This statutory provision ensures the right of individuals to participate in and observe open meetings of public bodies without unwarranted interference or exclusion.

134.    Furthermore, the harm inflicted upon the Plaintiff by the Defendants squarely falls within the category of injuries that the Michigan Open Meetings Act (MI OMA) and MCLS § 15.263(1) were expressly designed to prevent.

135.    Thus, as a direct and proximate result of the conduct of the Defendants named in this Count, said conduct being negligent per se in violation of the MI OMA, and specifically,

MCLS § 15.263(1), Plaintiff was thereby caused to sustain damages.

**COUNT IV**
**ASSAULT**
**As to Defendants Terence Green and Vincent Villareal**

136.     Plaintiff hereby repeats all of the allegations and exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

137.     At the Flint City Council meeting on April 28, 2025, Defendant Terence Green, a licensed police officer in full uniform and visibly armed, unlawfully assaulted the Plaintiff through unnecessary and unwarranted physical contact. This aggressive use of force, without any lawful justification, constitutes a clear violation of the Plaintiff's rights at a public meeting.

138.     At the Flint City Council meeting on April 28, 2025, Defendant Vincent Villareal, a licensed police officer and visibly armed, under the direction of Defendant Green, unlawfully assaulted the Plaintiff through unnecessary and unwarranted physical contact. This aggressive use of force, without any lawful justification, constitutes a clear violation of the Plaintiff's rights at a public meeting.

139.     Defendants Green and Villareal, being the Flint Police Officers present at the subject City Council meeting, approached Plaintiff and intentionally and unlawfully threatened to forcibly remove Plaintiff from the City Council meeting.

140.     This threat by Defendants Green and Villareal occurred under circumstances that instilled in the Plaintiff a well-founded fear of imminent harm. These circumstances included the Defendants' armed presence, aggressive and confrontational demeanor, and the Plaintiff's status as an unarmed African American male. This fear was further heightened by the Plaintiff's awareness of numerous local incidents of police violence against citizens of Flint, Michigan, underscoring the Defendants' deliberate intimidation and abuse of authority.

141.     Given Defendants Green and Villareal's stature, armed presence, and positions of

authority, coupled with their actions that were not carried out within the color of the law, the Defendants had the apparent and present ability to execute their threat if not restrained. Their conduct reflects an abuse of power that instilled a legitimate fear of imminent harm in the Plaintiff.

142. Consequently, due to the foregoing circumstances, the Plaintiff reasonably apprehended that physically injurious contact by Defendants Green and Villareal was imminent. This apprehension materialized in the Defendant's actions, culminating in the assault of the Plaintiff while he was physically and unlawfully removed from a public building.

143. As a direct result of the Defendants' actions—as described above—Plaintiff sustained physical injuries arising from the excessive and unwarranted use of force during his forcible removal from a public building. Specifically, while unarmed and exercising his protected First Amendment rights at an open public meeting, Plaintiff was subjected to unnecessary and aggressive physical contact by Defendants Green and Villareal. Their actions, taken outside the bounds of lawful authority and in a manner that was both indiscriminate and excessively forceful, led to immediate bodily harm and placed the Plaintiff at imminent risk of further injury.

144. The assault not only caused physical trauma but also instilled in the Plaintiff a profound and well-founded fear of imminent dangerous contact, given the Defendants' armed status, intimidating demeanor, and history of aggressive behavior. This assault occurred in a context where the Plaintiff's behavior—recording the meeting, possessing a bullhorn (unused in any disruptive manner), and supporting his political views—was within the bounds of his constitutional rights. Consequently, the injuries sustained by the Plaintiff include, but are not limited to, physical pain, emotional distress, and the lasting impact on his right to participate in public discourse without facing undue intimidation or harm.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**As to Defendants Ladel Lewis, Candice Mushatt, Joanne Gurley, Terence Green, Vincent Villareal, and H. Guy**

145.     Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

146.     On April 28, 2025, the Flint City Council convened an open public meeting. During this meeting, Plaintiff exercised his First Amendment rights by recording the proceedings with his camera, possessing a bullhorn (which remained unused), and speaking at the podium in support of Mrs. Biggs-Leavy.

147.     The meeting was conducted in an "at-ease" manner and notably lacked a quorum, yet Plaintiff was still within the class of individuals the Michigan Open Meetings Act (MCLS § 15.263(1)) was intended to protect.

148.     Despite there being no promulgated restrictions by the Flint City Council or the City on the use of recording devices, the possession of a bullhorn, or speaking during an "at-ease" meeting, Defendant Chairwoman Lewis, without resorting to any less restrictive measures or calling the meeting to order as required under Rule 29.7, proceeded with expelling Plaintiff from the meeting.

149.     Defendant Lewis' decision, executed via the use of duly licensed and armed police officers—including Defendants Green, Villareal, and Guy—was arbitrary, capricious, vindictive, and outside the bounds of lawful authority.

150.     During the expulsion, Defendant Green, in full uniform and armed, made unnecessary and unlawful physical contact with Plaintiff. Meanwhile, both Defendants Green and Villareal, through aggressive and confrontational behavior, issued threats that instilled in Plaintiff a well-founded fear of imminent physical harm.

151.     Plaintiff's apprehension was heightened by these threats given his status as an

unarmed African American male familiar with several local instances of police violence against the citizens of Flint, Michigan.

152.    Defendants knowingly and intentionally engaged in this conduct, or acted with reckless disregard, with the purpose of and with the effect of causing Plaintiff to suffer severe emotional distress.

153.    As a direct and proximate result of the Defendants' actions, Plaintiff has suffered and continues to suffer severe emotional distress and mental anguish, including, but not limited to, anxiety, fear, humiliation, and the trauma of being physically assaulted and unlawfully removed from a public space.

## PRAYER FOR RELIEF

154.    **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiff, JEDEDIAH BROWN, demands judgment against Defendants, LADEL LEWIS, CANDICE MUSHATT, JOANNE GURLEY, TERENCE GREEN, VINCENT VILLAREAL, and OFFICER GUY, and in the alternative, for alternative, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest pursuant to 42 U.S.C. 1988, and any further relief which the court may deem equitable and just.

## JURY DEMAND

155.    Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## CERTIFICATION

156.    Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of

my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

Dated: April_29___, 2025

_/s/ Lawrence A. Katz_____
LAWRENCE A. KATZ, ESQUIRE
NJ State Bar No.: 027051988
(Admitted in the E.D. of Michigan)
BEOWULF BUILDING
1814 East Route 70 – Suite 321
Cherry Hill, NJ 08003
(T) 856.652.2000 x497
(F) 856.375.1010
lakatz@lentolawgroup.com
*Attorney for Plaintiff*

*Of Counsel:*
DOLORES BOJAZI
BEOWULF BUILDING
1814 East Route 70 – Suite 321
Cherry Hill, NJ 08003