UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

— — —

JEDEDIAH BROWN,

      Plaintiff,

  v.                          Case No. 25-11225

LADEL LEWIS, CANDICE MUSHATT,    Hon. Matthew F. Leitman
JOANN GURLEY, TERENCE GREEN,
VINCENT VILLEREAL, and ERIC      *(Hearing conducted*
GUY, in their official and        *virtually using Zoom*
individual capacities,          *Video Communications)*

      Defendants.
_____/

<u>MOTION TO DISQUALIFY COUNSEL</u>

BEFORE THE HONORABLE MATTHEW F. LEITMAN
United States District Judge

Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan

Friday, October 31, 2025

*<u>To obtain a copy of this official transcript, contact:</u>*
*Robert L. Smith, Federal Official Court Reporter*
*(313) 234-2612 • robert_smith@mied.uscourts.gov*

*Motion Hearing • October 31, 2025*

**2**

APPEARANCES:

For the Plaintiff:        LAWRENCE A. KATZ
                          LLG National NJ, PC
                          1814 Route 70, Suite 321
                          Cherry Hill, NJ 08003
                          (856) 652-2000


For the Defendants:       FREDERICK A. BERG
                          SHELDON H. KLEIN
                          BUTZEL Long
                          150 West Jefferson, Suite 100
                          Detroit, MI 48226
                          (313) 225-7000

TABLE OF CONTENTS

MATTER_____ PAGE

ECF No. 11          Motion to Disqualify Counsel
                    Discussion with Mr. Berg............... 5
                    Discussion with Mr. Katz...............11
                    Discussion with Mr. Berg...............18
                    Discussion with Mr. Katz...............19
                    Discussion with Mr. Berg...............22
                    Discussion with Mr. Katz...............28
                    Ruling by the Court....................29

EXHIBITS:_____Offered_____Received

(No exhibits offered)

Detroit, Michigan *(Remote proceedings)*

Friday, October 31, 2025

at about 11:03 a.m.

—   —   —

(Court and Counsel present via Zoom Video Communications.)

THE LAW CLERK:  The United States District Court for the Eastern District of Michigan is now in session, the Honorable Matthew F. Leitman, United States District Judge, presiding.

The Court calls Case No. 25-11225, Jedediah Brown v. Ladel Lewis, et al.

Counsel, please state your appearances for the record.

MR. KATZ:  Lawrence Katz representing the plaintiff.

THE COURT:  Good morning.

MR. BERG:  Good morning, Your Honor.  Rick Berg, of Butzel Long.

MR. KLEIN:  Your Honor, Sheldon Klein, Butzel Long. I don't expect to open my mouth, so I'll mute myself after this, if that's okay?

THE COURT:  Sounds good.  Okay.

We're here for a hearing on the motion to disqualify Mr. Katz that was filed by Mr. Berg.

*Motion Hearing • October 31, 2025*

**5**

And, Mr. Katz, would you put your system on mute while I'm chatting with Mr. Berg, please.

MR. KATZ:  Yes, sir.

THE COURT:  Mr. Berg, I have read the motion and supporting documents carefully.  Quite clear in the papers is that Mr. Lento has a serious ethical problem and that he can be precluded from practicing.  What would be helpful for me is if you could connect the dots in small, bite-sized chunks, as to how Lento's ethical problems are a bar to Mr. Katz appearing in this case.

MR. BERG:  I will be happy to do that, Your Honor.

I will start with the fact that this is -- this is -- I'll just do a brief introduction, if that's all right, which is the Lento firm has nine lawsuits since 2023 against Flint and its members filed in this Court and five in state court.  All have been dismissed except four in this Court, all of which motions to dismiss are pending, including in this case.  We have had three cases go to the Court of Appeals and have prevailed in all of those.

And for the bite-size chunks:  I will commence.

Lento Law Group is a New Jersey law firm.  Mr. Katz is a New Jersey lawyer.  Mr. Katz is -- Mr. Lento is suspended for five years by the State of Pennsylvania.  He's also prevented from practicing law in the state of Virginia, now, which has occurred in -- it occurred in June, one month

after the filing of this motion.

Under both Michigan law and under New Jersey law, a disbarred lawyer -- disbarred or suspended in another state must notify their state bar or ethics commission of their suspension in the other state.  In Michigan, that's MCR 9.120(a) and New Jersey, that's 1:21-14(1).  In both of those states the findings of discipline or of wrongful conduct that were made by the other state in which the suspension or disbarment occurred are deemed conclusive by the state.  That is, if Pennsylvania, which is the case for Mr. Lento, found that he had engaged in bad conduct, New Jersey will accept those findings as conclusive.

Both Michigan and New Jersey statutes provide that a suspended or disbarred lawyer may not own or be employed by or share in the profits of any professional corporation.

Mr. Lento's website still continues to indicate that he is licensed in New Jersey, so evidently, he did not comply with his New Jersey ethical obligation to notify the state bar of New Jersey that he was, in fact, suspended in Virginia and Pennsylvania.

The only parties in a Michigan or a New Jersey professional corporation that can be owners of that corporation are lawyers.

In the -- in our motion -- attached to our motion were findings of fact that Mr. Lento was the only lawyer,

owner, shareholder of Lento Law Group, PC.  That allegation -- that conclusion that was made by the Pennsylvania findings of fact in the ethical proceedings there, was not rebutted, at all, in the plaintiff's response, so the Court can assume that Mr. Lento is the only owner of Lento Law Group.  He is not permitted to be an owner of that company.  He is not permitted to practice law through that company.  What that means is under -- under New Jersey law, if there is no owner of a professional corporation, it is deemed to become a business corporation and not a professional corporation, and only professional corporations can practice law, because professional corporations are governed by the Supreme Court of the state, as opposed to the legislature.

The -- because there is no lawyer-owner authorized to own and practice law through Lento Law Group, it is essentially a paper ship set a sail, without a captain, on the ocean; it has -- it has no authority, under the law, without a lawyer at its helm, to practice law in any jurisdiction.  It is the same as if Mr. Brown, the plaintiff in this case, attempted to appear through Walmart.  Walmart is not an entity which is authorized to practice law, nor is Lento Law Group authorized to practice law in this court, because it has no lawyer at its helm, who owns the corporation at this time.  There is no person who has been -- who has the right to practice -- and there must be a

lawyer who owns the corporation in order for a professional corporation to practice law.

Assuming that fault were remedied by some other lawyer buying in, it still cannot practice using the name Lento Law Group, because any company -- any law firm that refers to itself cannot misrepresent things to the public, and by holding out Mr. Lento's name, it represents to the public that Mr. Lento is authorized to practice law.  And, in fact, if you go to the Lento Law Group website at this time and find the Flint office and look at the lawyers, it shows that Mr. Lento is one of the lawyers who was authorized to practice in Flint, Michigan.  Now, his bio says he's limited to New York and New Jersey, but the website leaves one to believe that he is authorized to practice.  Well, he is not really authorized to practice in either New York or New Jersey and the only reason he can say that is, apparently, he's failed to give notice as he was supposed to, as a result of his Pennsylvania suspension and his Virginia suspension.

So the law firm is holding itself out as if Mr. Lento is a lawyer.  His picture and his reported accomplishments are touted throughout the Lento Law Firm website and that's a misrepresentation, because he's presently not authorized to practice law.  And so if he is -- if that is the case, then they would need to do a number of things; not only change the name of the

corporation, but scour his image and his accomplishments from the website, assure that he is not an employee of the corporation, because that's what both Michigan and New Jersey require, assure he's not making any money out of the corporation, because that's what both Michigan and New Jersey require, and demonstrate those things have occurred to the Court, before this law firm should be permitted to proceed.

I will state that, you know, I understand that Mr. Katz has been admitted into this district.  He has not joined himself with local counsel.  Local counsel is required.  This Court has discretion to excuse that requirement.  However, that excuse is supposed to be applied for to this Court, and that has not been done properly.  They did so by appending a motion to their response to our motion, and that's a violation of local District Rule 7.1(i), which says that such a motion made a part of a response will be stricken.

I can advise the Court, in one of the other pending Lento cases we are defending, Judge Kumar did exactly that, they did the exact same thing and she struck their response to this motion to disqualify, because she included this motion.

So at least from our standpoint, we think there is, at the moment, no proper application to allow appearance without local counsel.

Moreover, should we be asked for our opinion, we would recommend to the Court that not be permitted, because it is clear that, based on our experience and even in this case, that the local rules are not being followed, which is, of course, one of the primary functions of local counsel.

You know, if Mr. Katz were to associate with another law firm, that would be fine. I don't argue that Mr. Katz has the ethical obligations. Our argument is that Lento Law Group is disabled -- legally disabled under the law and cannot represent clients in court, based upon the ethic rules of both Michigan and New Jersey, not only the ethical rules, but the corporate rules and the statutes that permit the practice of law through professional corporations.

THE COURT: So the bottom line here is that the problem is, in your view, Mr. Katz's practicing law through the Lento Law Group?

MR. BERG: That's correct.

THE COURT: Which is --

MR. BERG: That's correct.

THE COURT: All right. I think I understand -- go ahead.

MR. BERG: I also believe that this Court should enforce the local rule that requires local counsel.

THE COURT: Okay. Thank you. Would you mute please, Mr. Berg.

*Motion Hearing • October 31, 2025*

**11**

MR. BERG: Yes, Your Honor.

THE COURT: Mr. Katz, I see you have unmuted. Thank you for doing that.

Mr. Katz, it seems like there is not a lot of dispute with Mr. Berg's recitation of the legal rules concerning the consequences of Mr. Lento's suspension. In other words, there is no real dispute that he can't practice. There doesn't seem to be a dispute that the firm should stop using his name. There doesn't seem to be a dispute that he's the only owner of the firm, and as the only owner who is not allowed to practice, as Mr. Berg said, the firm is no longer treated as a professional corporation.

What is the flaw in Mr. Berg's argument that the problem here is you practicing through an entity that is, itself, not properly practicing law?

MR. KATZ: Your Honor, there were a few inaccuracies in Mr. Berg's representation. First, Mr. Lento is still a licensed attorney in the states of New Jersey and New York. In fact, Mr. Lento did inform -- self report to both New Jersey and New York, the prior disciplinary practices against him.

Despite the fact that the rules would indicate that the Pennsylvania discipline should be accepted, per se, it is my understanding that both -- that neither New York nor New Jersey has chosen to do so. Whether, in fact, performing an

independent analysis of the Pennsylvania decision, and pending that analysis and hearings and conferences on that matter that I know have been occurring, he still happens to be a regist -- a licensed attorney in two states, including, and most particularly, New Jersey, where Lento Law Group is incorporated.

In addition, while all the paperwork has not been transferred yet, the firm is now also functioning under a new name, LLG National, because of the issue whether or not Mr. Lento's name should be included in the -- in the law firm's name.

Additionally, Your Honor, a recent development, and something that we hope to finalize within the next few days, an attorney whose name is Toi J. Thomas, and who has an office in Flint -- excuse me -- who has an office in Flint, Michigan, will be associating with our firm and entering her appearance in this and the other Flint-related cases.

On that basis, I would respectfully submit that the motion to disqualify should be dismissed, we be permitted to move forward, and, obviously, moving forward with local counsel will permit us to more faithfully follow the local rules of this Court.

THE COURT:  Who is the lawyer that you say is going to be appearing in the case?

MR. KATZ:  A young lady, Your Honor, and her first

name is Toi, T-O-I, middle initial J, Thomas, who has informed us that she is a member of the Eastern District bar.

THE COURT:  Is Mr. Lento the sole owner of LLG National or whatever that other entity is called?

MR. KATZ:  Your Honor, I don't know the answer to that question, to be perfectly honest.  I do know this, though, that it is an Arizona corporation and in Arizona, at least, non-lawyers are permitted to be partners in a law firm, and so I don't know whether he's the sole owner or not. There is -- there are probably other people involved in owning the law firm as that Arizona corporation, but I can't speak to the details of that.

THE COURT:  Mr. Katz, why don't you disassociate with LLG and Lento?  This seems to be a huge problem, and the idea that this new entity pops up in a state where non-lawyers can own, I mean, it has a feel about it that seems to be evading the rules under the practice of a different state, and it looks bad.  I mean, the head of the firm has been suspended for five years by a Pennsylvania body that found he had no regard for the concern of his clients. Why are you fighting this fight, as opposed to just saying, thanks, I'm going to hang out my own shingle and not fight this fight in every case?

MR. KATZ:  Your Honor, I will be perfectly honest with you, these are Lento clients, not my own client.  I am a

*Motion Hearing • October 31, 2025*

**14**

W-2 employee of the Lento Law Firm. I have no ownership or partnership role in it. I receive a weekly or bi-weekly salary. It would be, I have no interest in practicing on my own and it would be inappropriate to take clients that have been developed by the Lento firm and who have been retained by them.

THE COURT: All right. The Genesee County Circuit Court granted a motion that was nearly identical to this. Can you explain to me how you believe that court erred?

MR. KATZ: I believe the court erred because we were in between counsel at the time. For a more thorough explanation of what occurred in that case, Your Honor, the firm was represented by local counsel, with a gentleman -- I'll be quite honest, I can't remember, the name off the top of my head.

THE COURT: Harrell Milhouse.

MR. KATZ: Yes, Mr. Milhouse. Thank you. Mr. Milhouse had orally moved permission for me to argue a case in a pro hoc status, because I'm not a member of the Michigan State bar, and this was before a Michigan State court. I was granted leave to do so. When the next step in the hearing had -- by the time the next step in the hearing had come, Mr. Milhouse had left the firm. We did not have an another local counsel yet, and, therefore, there was not even the slightest relationship between myself and the case,

because I wasn't a member of the Michigan bar, unlike here, where I'm a member of the Eastern District bar and have been for quite a long time, Your Honor.  And I think those are the circumstances that are different.  The case was on the verge of being dismissed, anyway, on its merits, and at the same time, the court held that they would not allow me to pro hoc back in, in the last stage of the case.

THE COURT:  Give me just one second here.

MR. KATZ:  Certainly, Your Honor.

THE COURT:  Did I understand you to say that the plaintiff, Mr. Berg, is a client of Mr. Lento?

MR. KATZ:  Well, he's a client of the Lento firm. I'm not -- if Your Honor would like, I will go and look at the engagement letter and see who he generally -- who actually represents him, but I can tell you, as a matter of course in the Lento Law Group, the person signs a retainer agreement with the group itself, rather than a particular lawyer.

THE COURT:  Is the --

MR. KATZ:  The same group that employs me.

THE COURT:  Is the group 100 percent owned by Mr. Lento?

MR. KATZ:  It's my understanding that it is, but that question is well above my pay grade, but my understanding is that he's the owner of that firm.

THE COURT:  Why isn't the following chain of reasoning, correct --

MR. KATZ:  Your Honor -- Your Honor, I'm having problems hearing you, all of a sudden.  I don't know whether there's a problem with the microphone or not.

THE COURT:  Can you hear me now?

MR. KATZ:  No.  Let me turn up my volume, perhaps.

THE COURT:  Mr. Berg, are you able to hear me?  You are on mute, Mr. Berg.  Mr. Berg, I can't hear you because you are on mute.

MR. KATZ:  Your Honor, my volume suddenly declined quite a bit.  I can hear you, but nothing like a minute ago.

MR. BERG:  For some reason, your microphone seems to be less effective.  It is quieter than it was a moment ago.

MR. KATZ:  I've boosted my volume, though, Your Honor, and that should allow me to hear your question.

THE COURT:  All right.  Can you hear me now, Mr. Katz?

MR. KATZ:  I can.

THE COURT:  All right.  Before we go further, I want to direct both of you to call your Congress person and tell them, first, please resolve the shutdown so we can get our staff back, including our IT staff that could help me figure how to you use this damn computer; and, second, to

allocate more money to the federal courts IT system.  That was, of course, a joke, but it's frustrating to have staff not getting paid and IT that is old.

In any event, Mr. Katz, getting back to this case, why isn't this the right way to think about this?  That the Lento Law Group, as a firm, is not eligible to be practicing law in Michigan because it's wholly owned by somebody who has been suspended from the practice of law in another state, step one.

Step two, therefore, lawyers can't appear here through the Lento law firm.  So if you were appearing Lawrence Katz, on your own, no problem, but when you appear through a firm that's not authorized to practice law here because its sole owner has been suspended, that's the problem.  Where's the error in that reasoning?

MR. KATZ:  I believe the only error in the reasoning may be, Your Honor, the question of whether or not Mr. Lento remains an attorney, and at this stage, he does remain an attorney in the state of New Jersey, where Lento Law Group is incorporated, as well as the state of New York. Each state's jurisdiction is different over their own attorneys.  And while Mr. Lento cannot practice in the commonwealth of Pennsylvania, he can practice in the state of New Jersey at this time, and until the New Jersey Supreme Court rules otherwise, he is an attorney in New Jersey and is

entitled to all the rights and privileges of an attorney, including owning a law firm.

By the way, Your Honor, I agree with the need for the end of the government shutdown.  The IRS has screwed up a refund terribly and there's obviously only two people across the entire country to talk to and you spend four hours waiting on hold, so I'll be happy to write those letters.

THE COURT:  Just give me one second.

All right.  Anything else that you want to say, Mr. Katz?

MR. KATZ:  No, Your Honor.

THE COURT:  All right.  Mr. Berg, let me come back to you with a question.  Isn't there a difference, under the rules, between someone whose law license has been suspended and somebody who has been suspended from the practice in a particular jurisdiction?  In other words, it looks like Lento's licenses are in New Jersey and in New York, but Pennsylvania has barred him.  Was he also licensed in Pennsylvania?

MR. BERG:  He was, Your Honor.  He was.  He was apparently licensed in Pennsylvania.  The Virginia suspension is not as clear to me.  It is a -- it is a revocation of his rights to practice, and it was unclear to me from the opinion, which I have in my hand, dated June 26, 2025, whether that right to practice was one in which he was

admitted in some other manner or whether he was a member of the Virginia bar. So -- but he has been -- his -- he has a permanent revocation in Virginia.

MR. KATZ: I can clarify that, Your Honor, if you'd like?

THE COURT: Go ahead.

MR. KATZ: Mr. Lento was not a member of the Virginia bar. The Virginia bar thought that some of his advertising may have indicated that he could practice in Virginia, because of that they used the word, "revocation," but he had never been a member of the Virginia bar.

THE COURT: What about Pennsylvania?

MR. KATZ: Yes. Mr. Lento was a member of the Pennsylvania bar. The Pennsylvania Supreme Court suspended him for five years. That has been appealed. There's one last level of appeal that actually will be filed within the next day or two, but at the moment, it stands as it is.

THE COURT: All right. Mr. Katz, again, let me come back to you. Mr. Berg's reasoning in his motion, in part, says our court has adopted the Michigan Rules of Professional Conduct, and the Michigan rules provide that where an attorney's license has been suspended, that attorney's name shall not be used in the firm's name and that that suspended lawyer shall not be a member of a professional corporation.

So, again, going back, kind of reasoning through it, why isn't the right way to look at this, the suspension in Pennsylvania of his law license triggers these problems under Michigan law for him, because Michigan recognizes the Pennsylvania suspension, and under Michigan's rules, there shouldn't be a law firm practicing here that has Lento in its name or that has Mr. Lento as a member or owner of it. You've indicated the name, you believe, has changed, but at a minimum, it sounds like he's still a member and we have a firm that is allowing a member to practice, apparently in violation of the Michigan rules. Why should you be able to appear through a firm that, itself, doesn't seem to be complying with the rules?

MR. KATZ: Two things, Your Honor. First of all, Mr. Lento does not actually practice law. He's not engaged in the handling of any case. He doesn't -- his appearance is entered in few, if any, cases, and if they are, they're quite old. Mr. Lento spends most of his time these days doing some administrative work. But more importantly, Your Honor, each state has the right to control their own bar and their own members. Had the Lento Law Group been a Pennsylvania corporation, a Pennsylvania law firm, and Mr. Lento was suspended as he is, then I believe Mr. Berg's argument would be valid.

However, because the firm that I'm employed by is a

New Jersey firm, a New Jersey corporation, and Mr. Lento's New Jersey bar is still active, we would suggest that when the State of Michigan looks at it, they should focus on the law firm itself, a New Jersey law firm, and the attorney himself, a New Jersey attorney, who is still active to practice in New Jersey.

THE COURT: But isn't part of what you said that each state should be able to regulate the practice of law, I get that, but what about the argument that Michigan has chosen to regulate the practice of law here by saying that if a lawyer is suspended, he shouldn't be an owner of a professional corporation. So if that's allowed in New Jersey, fine, but he's -- his license has been suspended in at least one jurisdiction, and why isn't the right way to look at this, Michigan says if that happens, you can't be an owner of a law firm that practices here?

MR. KATZ: I agree that's certainly one interpretation of the Michigan rule, but the other interpretation that looks at the facts more closely, would be to say that, this is a Michigan -- I'm sorry, a New Jersey corporation, a New Jersey law firm, being headed by someone who still holds a New Jersey license and, therefore, the suspension should not be relevant.

If, for instance, there was the Lento Law Firm rather than the Lento Law Group that was a Pennsylvania

corporation, and I was employed by the Lento Law Firm and the Lento Law Firm, through me, was attempting to practice in Michigan, I would say, certainly, that would fall squarely within the rule, but I think here, Michigan has to look at the specific law firm, the specific lawyer and their relationship to each other, which I believe is the alternative reading of that rule and the reading that looks at the facts in a more realistic manner.

I can see Your Honor's interpretation and Mr. Berg's interpretation is certainly one interpretation of those rules.

THE COURT: Is this a -- is it a reasonable interpretation? Is there more than one reasonable interpretation of the rule here, in your view? In other words, is yours reasonable and the one that I have been giving voice to, is that also reasonable?

MR. KATZ: I prefer not to answer that question, but honestly, Your Honor, yes, they're both reasonable.

THE COURT: All right. Anything else that you care to say, Mr. Katz?

MR. KATZ: No, Your Honor.

THE COURT: Mr. Berg.

MR. BERG: Yes, Your Honor. Briefly in reply, I will first state that I think your last question -- longer question posed to Mr. Katz about what our position was, was

succinct, correct and stated well what our position is; that this Court adopts the Michigan rules, that Michigan does not permit the use of Mr. Lento's name in advertising or his participation in the firm's profits or employment or ownership.

I will -- I would like to address a couple of very discrete points.  Would it be permissible for me to share my screen with the Court?

THE COURT:  If you know how to do that, I will be impressed, so go ahead.

MR. BERG:  All right.

THE COURT:  Mr. Katz, do you mind muting?  It helps to avoid feedback.

Go ahead, Mr. Berg.

MR. BERG:  All right.  Do you see the certificate of incorporation of LLG National Law Group here?  I can enlarge it if it helps.

THE COURT:  Yes, I do.  All right.

MR. BERG:  Is that better?

THE COURT:  I can see it.

MR. BERG:  Okay.  This -- we became aware that it appeared that this series of motions that we filed, and there are four of them in four pending court cases, this is the first hearing of a motion to disqualify in the Eastern District of the four motions we filed.

We became aware that they may be trying to circumvent the consequences that were called to their attention by our motion by filing -- by changing a name. This is a new entity filed a couple -- four months ago, by LLG National Law Group New Jersey.  This is in New Jersey. The address of the corporation is 1814 Route 70 East, Suite 323, Cherry Hill New Jersey, and I think Mr. Katz will confirm that is his office address, and the registered agent is Joseph Lento.  The number of directors include Mr. Lento and one other person, and so he is identified as both a director and the incorporator of the New Jersey corporation.

And so while they -- I will stop sharing.

While it is evident they seek to evade the consequences of the use of the name by a little bit of window dressing, it does not appear that they intend to address the real substance of the problem, which is Mr. Lento's involvement, despite the fact that he should not be involved.

Secondly, I will point out that with regard to the state court case in which a lawyer -- a local lawyer left and that presented Mr. Katz with a problem, I can name John Hernandez, who has left; I can name Harrell Milhouse, who has left, and I can name Jewuel Boswell, who has left; all of whom have created similar problems in other cases.  As I say, this is the fourteenth Lento case we have been addressing since the Lentos arrived in Flint two years ago.

To say that the firm is being opportunistic, I do not think is an overstatement.

Mr. Katz spoke a little bit about the Brown engagement letter and who is the lawyer and who is in charge of Mr. Brown as a client. The Lento firm, as we have argued in our motion to dismiss, when the Court gets to it, now pending before this Court in this case, our reply brief is due next Friday. We argue that these cases are staged. That is Lentos firm is the puppet and Mr. Brown is the puppeteer. Mr. Brown is a professional rabble rouser. He travels around and creates disturbances in various places. Here Mr. Grout, the firm administrator for Lento Law Group, is seen side-by-side with Mr. Brown in the videos that give rise to his claims in this case. They are fomenting this litigation in Flint. And the -- the -- the distaste, the problems associated with Mr. Lento's style of practice have filtered down into our fair community and our firm has had the privilege of defending them, but it's a problem that ought to be addressed and addressed in this Court.

THE COURT: All right. Thank you.

All right. I'm going to rule orally on this motion at this point. So when I first read these the papers, I was struggling to understand the link between Mr. Lento's problems and Mr. Katz's practice of law here, but through the hearing, I have gathered a better understanding.

I do see it the way that I laid out in my question to Mr. Katz that, in the words of Mr. Katz that I think are correct, each state gets to decide the standard for the practice of law within its borders, and our Court has adopted the Michigan Rules of Professional Conduct. And as Mr. Katz candidly acknowledged, and I appreciated his candor, it is a reasonable reading of the Michigan rules to say that under those rules, it shall not be the case that an attorney whose license to practice law has been suspended, even if the suspension is by another state, it shall not be the case that that lawyer's name is used in the law firm's name and, more relevant here, that that lawyer is a member of a professional corporation.

Here, the evidence in the record before me are that Mr. Lento's license to practice law in the state of Pennsylvania was suspended, and in my view, the upshot of that is that in Michigan, a law firm bearing his name shall not be practicing here, and in Michigan, a law firm owned by him as a member or otherwise, shall also not be practicing here with him, again, owning it or being a member.

And so I do think that although there's been no suggestion that Mr. Katz has an ethical problem and, frankly, given Mr. Katz's conduct on this call, he seems to me to be a highly ethical person, at least in my interactions with him and his candor with me, even though there's no indication

that he personally has an ethical issue that would prevent him from practicing here, I do think that the practice through the Lento Law Group is the problem and is a bar on him continuing in this case through the Lento Law Firm.

I am not the first court to look at this. The Genesee County Circuit Court reviewed a motion that was quite similar to the motion that Mr. Berg filed. I reviewed the motion, it was to disqualify Mr. Katz, and the motion was granted in an order that said it was granted for the reasons stated in the motion, and, again, the motion was much like the argument here, and invoked many of the same rules of professional conduct here. And while I'm certainly not bound by a trial court in the state court here in Michigan, I do think that it is somewhat persuasive and it reinforces my view, again, a view that Mr. Katz's candidly identified as a reasonable view of how these rules operate.

Now, Mr. Katz raised what would be a serious concern here, which is one of the things that a court has to be careful about when evaluating a disqualification motion, is what is the impact on the client? And Mr. Katz informed us today that the client has lined up a person to serve as local counsel. Now, on one hand you might say, well, that doesn't mean the client has secured full counsel because the lawyer has agreed to serve as local counsel.

But, of course, under our local rules, which is

local Rule 8320(f)(1) -- excuse me, yeah, 8320(f), in (1), the general requirements of local counsel, we require local counsel to enter an appearance and, more importantly here, to have the authority and responsibility to conduct the case if nonlocal counsel does not do so.

So the willingness of the counsel identified by Mr. Katz to step in as local counsel is, under our local rules, tantamount to an agreement to serve as primary counsel.

And so considering the prejudice component of this, my view now is that there is a lawyer who, in Mr. Katz's words, has stepped forward and indicated a willingness, if necessary, to take on the whole load and it has now become necessary.

MR. BERG: Your Honor, I apologize for interrupting. The lawyer was Toi Thomas. Toi Thomas is a member of the Lento Law Firm. I can share my screen and show that to you now. So the same problem exists with Ms. Thomas. And so while I don't wish to interrupt, and I appreciate where the Court was going with regard to the lawyer that was mentioned, that does not solve the issue that's before the Court.

THE COURT: Okay.

MR. KATZ: Your Honor --

THE COURT: Go ahead, Mr. Katz.

MR. KATZ:  I was simply going to say, I was going to wait until Your Honor finished, but that is accurate, and I was going to bring that to the attention of the Court also.

THE COURT:  Okay.  Then Attorney Thomas has the same problem you do, and while what I said about the mitigation of prejudice, that reasoning doesn't hold.  You know, I've weighed the -- my view is if there's merit to this lawsuit, as much merit as the plaintiff says there is, there ought to be another lawyer here who would be willing and able to take the case.  It's at the early stage, so the plaintiff has time to find new counsel.  And, in fact, what I'm going to do now is I'm going to grant the motion to disqualify Mr. Katz and I'm going to stay this case for 60 days.  So Mr. Berg, you don't have to file your reply brief.

MR. BERG:  Thank you, Your Honor.

THE COURT:  The 60 days will be for the plaintiff to find new counsel, and that's because, as I indicated, I'm sensitive to issues of prejudice, but at this very early stage of the case, 60 days seems to me to be plenty of time to find a new lawyer.  Once the new lawyer gets into the case, I will schedule a status conference, and I would be happy to work with that lawyer to find a schedule that works to make sure that this change isn't unduly prejudicing the plaintiff.

And there's always the opportunity, Mr. Katz, for

you to appear in this case, if you are not affiliated with the Lento Law Group and for any lawyer to appear, but given the situation of the Lento Law Group and the way that I believe the Michigan Rules of Professional Conduct ought to be applied here, I just find it too problematic for that firm, with its current ownership structure and its current use of Lento's name, to be practicing here.

So for those reasons, I'm going to grant the motion to disqualify Mr. Katz, making crystal clear that this has nothing to do with Mr. Katz personally, who I have real respect for, but I'm going to grant the motion, stay the case for 60 days, and that will be my reasons here.  I will enter an order to that effect.

Anything else, Mr. Berg?

MR. BERG:  No, Your Honor.  Thank you very much for your time today.

THE COURT:  Mr. Katz?

MR. KATZ:  One question, Your Honor.  Will the bench ruling constitute the decision or will you be making a detailed written finding also?

THE COURT:  There will not be -- the order will just say for the reasons stated on the record, which I hope were clear.  I want to get this case moving, and I tried to be as clear as I can be.  I'm often not as clear as I hope to be or think that I am, but I tried to make it as clear as I

can, that, as you indicated, this view that I'm using of the rules is a reasonable one and that when applied here, the upshot is the Lento Law Group under Mr. Lento's ownership and direction, attorneys should not be practicing in our Court through that group at this time, even if he's still licensed in New Jersey, because Michigan would recognize and give import to the license suspension in Pennsylvania.

So I won't have a written, scholarly, deep dive into this. I hope that my oral ruling has been enough. I will look forward to taking further steps in this case.

With respect to the motion for local counsel, I'm just going to terminate that as moot. Thank you, guys, very much for your time, I appreciate it. Take care.

MR. KATZ: Thank you, Your Honor. Pleasure meeting you, sir.

MR. BERG: Thank you.

MR. KATZ: Rick, take care.

MR. BERG: You too, Larry.

MR. KATZ: Bye, Sheldon.

(Proceedings concluded at 11:53 a.m.)

C E R T I F I C A T I O N

I, Robert L. Smith, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages comprise a full, true and correct transcript taken in the matter of Brown v. Lewis, et al., Case No. 25-11225, on Friday, October 31, 2025.

*s/Robert L. Smith*
Robert L. Smith, RPR, CSR 5098
Federal Official Court Reporter
United States District Court
Eastern District of Michigan

Date: 12/10/2025
Detroit, Michigan